Case 3:21-cv-00365 Document 62 Filed on 02/13/23 in TXSD Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
February 13, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| IN RE M/T STOLT FLAMENCO | § § § § § | CIVIL ACTION NO. 3:21-cv-00365 |

## MEMORANDUM AND RECOMMENDATION

Pending before me is a Rule 60 Motion for Relief from Order,[1] and Motion to Stay Consideration of Motion to Lift Stay ("Rule 60 Motion") filed by Limitation Petitioner Hammonia Reederei GmbH & Co. KG ("Hammonia"). *See* Dkt. 58. Having considered the briefing, the record, and the applicable law, I recommend that Hammonia's Rule 60 Motion be **DENIED**.[2]

## BACKGROUND

This limitation action involves a tragic boating accident that resulted in the death of Dewey Monroe and the injury of his fishing companion, Donald Currie ("Currie"). Currie and Susan Perry-Monroe[3] ("PI Claimants") filed suit in Texas state court against Stolt Tankers B.V., Stolt Flamenco B.V., and Stolt-Nielsen USA Inc.

---

[1] Rule 60 provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." FED. R. CIV. P. 60(b).

[2] The Fifth Circuit has held that "[28 U.S.C.] § 636(b)(3) authorizes a district court to refer to a magistrate a motion made pursuant to Rule 60(b), at least for the limited purpose of holding an evidentiary hearing and preparing for the district court proposed findings of fact and recommendations for the disposition of the motion." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 925 F.2d 853, 856 (5th Cir. 1991). United States District Judge Jeffrey V. Brown referred this motion to me on January 12, 2023. *See* Dkt. 59.

[3] Mrs. Perry-Monroe is proceeding individually and as representative of the estate of decedent Dewey Monroe.

(collectively "Stolt") as owners/operators of the *Stolt Flamenco*. PI Claimants also filed suit in Texas state court against Hammonia and MSC Mediterranean Shipping Company S.A. ("MSC") as the owner/operator and charterer, respectively, of the *MSC Valencia*. Stolt and Hammonia both instituted limitation actions, which were consolidated into this proceeding. *See* Dkt. 24.

On September 15, 2022, after Stolt settled with PI Claimants (*see* Dkt. 44), Judge Brown dismissed all claims against Stolt with prejudice. *See* Dkt. 45. The next day, PI Claimants filed a Motion to Lift Stay, which would allow them to return to state court to prosecute their claims against Hammonia. *See* Dkt. 46. Hammonia objected, in part, because all claimants had not entered stipulations. Specifically, Hammonia argued that MSC had "asserted separate claims against Hammonia for costs and attorney's fees" and was also required to stipulate. Dkt. 48 at 6–7. On December 16, 2022, MSC filed a Notice of Voluntary Dismissal with Prejudice (*see* Dkt. 55), thus mooting Hammonia's objections that all claimants had not entered stipulations. PI Claimants filed Amended Stipulations (*see* Dkt. 54) addressing Hammonia's remaining objections and, at a December 20, 2022 status conference, counsel for Hammonia conceded that the Amended Stipulations are sufficient to protect Hammonia's rights.

That should have been the end of the matter. Alas, Hammonia has purportedly found yet another reason why this Court should not permit PI Claimants to return to state court. In its Rule 60 Motion, Hammonia argues that the settlement agreement ("the Agreement") between Stolt and PI Claimants "is arguably akin to a 'Mary Carter Agreement' that should be struck by this Court as void under public policy." Dkt. 58 at 7. Hammonia makes this argument because the Agreement provides that PI Claimants and Stolt will "share the first $400,000.00" of any settlement or judgment paid by Hammonia "on a 50/50 basis." Dkt. 58-3 at 4. Hammonia asks this Court to "reactivate the Stolt Action so that Hammonia's claim for contribution against Stolt can be reasserted" and argues that "this entire proceeding should remain in federal court and not be returned to Texas state court." Dkt. 58 at 7. This is inappropriate for a number of reasons, each of which I will address in turn.

Before I do though, I want to state outright that I firmly believe the Agreement stinks to high heaven. The parties know the Agreement stinks because it provides PI Claimants with scripted language to use when "asked about the resolution of their Claims against [Stolt]." Dkt. 58-3 at 6. Alas, what one considers morally right and what is right under the law are not always the same thing. It is not my job to determine what is morally right. It is my job to determine whether the Agreement is legally permissible. Controlling Texas and federal law say it is.

## ANALYSIS

### A.  Hammonia Lacks Standing to Challenge the Agreement

Hammonia is not a party to the Agreement between Stolt and PI Claimants. Nevertheless, Hammonia seeks to invalidate the Agreement, arguing that its "structure . . . was legally suspect." Dkt. 58 at 8. Specifically, Hammonia contends "that Stolt retains a financial interest in the PI Claimant's future recovery"; "the Agreement . . . undermines the credibility of future Stolt witnesses"; "the Agreement has the net effect of promoting litigation rather than ending it"; and the Agreement creates "a $400,000 settlement headwind" for Hammonia. *Id.* at 12–13. These are all totally true statements. But no matter how true, none of these facts give Hammonia standing to challenge the Agreement.

The Fifth Circuit has stated that courts "should not intercede in [a] plaintiff's decision to settle with certain parties, unless a remaining party can demonstrate plain legal prejudice." *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1165 (5th Cir. 1985) (quoting *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1233 (7th Cir. 1983)). "Plain legal prejudice" is not mere "factual injury," "tactical disadvantage," or a financial headwind. *Id.* (quotation omitted).

> We fail to see . . . why a plaintiff should be foreclosed from voluntarily settling with one defendant on mutually agreeable terms simply because those terms remove plaintiff's economic incentive to settle with the other defendants. That, it seems to us, is a consequence that may well flow from *any* settlement with less than all defendants. The fact that such a consequence is assured when the settlement agreement includes a Mary Carter provision, assuming no additional terms which purport to deprive the non-settlors of substantive or procedural rights to which they are entitled, does not disturb us.

*Id*. Accordingly, only the deprivation of a substantive or procedural right will justify setting aside a settlement agreement.

The only "right" Hammonia points to is its inability to bring a contribution claim against Stolt. *See* Dkt. 61 at 3. But Hammonia's purported contribution *claim* against Stolt is not a substantive or procedural right. To the extent contribution is a *right*, it is the "right to collect from others responsible for the same tort *after* the tortfeasor has paid *more* than his or her proportionate share." *Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 602 (5th Cir. 2010) (quotations omitted and emphasis added). In other words, "contribution requires that the claimant have paid more than he owes, and have discharged the entire claim." *Id.* at 603. But Hammonia has paid nothing, and its share of liability has yet to be determined. Moreover, in *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994), the Supreme Court held that "when one defendant of many settles with a plaintiff, the liability of the remaining non-settling defendants is calculated based on their proportionate responsibility for the plaintiff's injuries *without regard to the amount of the settlement*." *Combo*, 615 F.3d at 603 (emphasis added) (citing *AmClyde*, 511 U.S. at 221).

In other words, the Agreement will neither increase nor reduce Hammonia's proportionate share of liability. Rather, it has no effect. Indeed, the trier of fact may yet exonerate Hammonia from fault. Or the trier of fact may find Hammonia only 10% liable. In either of those events, the Agreement would prove quite improvident to PI Claimants. *See AmClyde*, 511 U.S. at 221 ("Just as the other defendants are not entitled to a reduction in liability when the plaintiff negotiates a generous settlement . . . they are not required to shoulder disproportionate liability when the plaintiff negotiates a meager one."). Regardless, all Hammonia will ever pay is its proportionate share. Accordingly, Hammonia has not pointed to the deprivation of a right that would support this Court's intercession into PI Claimants' choice to settle their claims with Stolt. Alas, even if I assume *arguendo* that Hammonia has standing to challenge the Agreement, the challenge still fails.

**B.     The Agreement Is Valid**

The parties dispute whether I should look to Texas law or federal maritime law to determine the Agreement's validity. That is not a question I need to decide, however, because the Agreement is entirely permissible under either.

### 1.     *The Agreement Is Enforceable Under Texas Law*

The Texas Supreme Court has said that a "Mary Carter agreement exists when the settling defendant retains a financial stake in the plaintiff's recovery *and* remains a party at the trial of the case." *Elbaor v. Smith*, 845 S.W.2d 240, 247 (Tex. 1992). The emphasis in that statement comes from the Texas Supreme Court, not me. Were there any doubt that a settlement agreement must require the settling defendant to remain in the case for the agreement to be declared "void as violative of sound public policy" (*id.* at 250) under Texas law, the Texas Supreme Court put that issue to bed in *Elbaor*: "Obviously, a Mary Carter agreement would not exist if a settling defendant acquires a financial interest in the outcome of the trial and then testifies at trial as a non-party witness." *Id.* at 247 n. 14; *see also Darden v. Kitz Corp.*, 997 S.W.2d 388, 393 (Tex. App.—Beaumont 1999, pet. denied) (upholding a settlement agreement that the court otherwise "might have concluded" was "tainted" specifically because an order of dismissal with prejudice was entered against the settling defendant, meaning that it was no longer a party to the litigation and the "settlement agreement was [thus] not a Mary Carter agreement"). PI Claimants raised this issue in their response. *See* Dkt. 60 at 11 n.3. Yet, Hammonia—despite being the party that insists Texas law must govern the validity of the Agreement—offers no response whatsoever in its reply. Frankly, there is nothing to say. Right, wrong, or otherwise, the Texas Supreme Court has made very clear that a defendant must remain a party to the case for an otherwise Mary Carter-like agreement to be void against public policy. Stolt is undeniably dismissed from this case. Thus, the Agreement is not void against public policy under Texas law.

### 2.     *The Agreement Is Enforceable Under Federal Law*

Nor is the Agreement void under federal law. "Mary Carter agreements . . . have frequently been approved by the [Fifth Circuit]." *Lexington Ins. Co. v. S.H.R.M. Catering Servs., Inc.*, 567 F.3d 182, 186 (5th Cir. 2009). Hammonia does not dispute

5

the Fifth Circuit's prior approval of Mary Carter agreements. Rather, Hammonia argues that—whether it is properly classified as a Mary Carter agreement or not[4]—the Agreement "is nothing less than a contribution claim against Hammonia in everything but name." Dkt. 61 at 5. Hammonia contends that because Stolt "has a continued financial interest in, and possibly recovery from" Hammonia, the Agreement violates the proportionate liability framework for maritime cases. *Id.* I agree with Hammonia that the Fifth Circuit has "made clear that the only instance in which a settling tortfeasor could maintain a contribution claim against a non-settling tortfeasor is when the settling party obtains a full release for all potentially liable parties." *Id.* at 4 (citing *Combo*, 615 F.3d at 603). I also agree with Hammonia "that the issue of *AmClyde* and *Combo Maritime*'s impact on the validity of Mary Carter agreements is a matter of first impression." Dkt. 61 at 5 n.1. But I do not agree that *Combo*'s holding can be turned on its head to vitiate a private agreement between two parties that has no effect on Hammonia paying its proportionate share of liability (if any). Nor do I think this is a close call.

The Fifth Circuit is aware of the perverse financial incentive created by agreements like the one at issue here, but this perverse incentive "does not disturb"

---

[4] At times the Fifth Circuit, like the Texas Supreme Court, "has defined Mary Carter Agreements generally as 'a secret contract between the plaintiff and one of several defendants whereby the contracting defendant will settle with the plaintiff before trial, *but must remain in the suit*, and will be reimbursed to some specific degree from the plaintiff's recovery from the other defendants.'" *Lexington*, 567 F.3d at 186 (emphasis added) (quoting *McDaniel v. Anheuser–Busch, Inc.*, 987 F.2d 298, 309 n. 49 (5th Cir. 1993)). Under this definition, the Agreement is not a Mary Carter agreement because Stolt is no longer a party to the suit. Unlike the Texas Supreme Court, however, the Fifth Circuit has also classified settlement agreements that do *not* require a defendant to remain in the suit as Mary Carter agreements. *See, e.g., Bass*, 749 F.2d at 1156 n.2 ("Mary Carter agreements . . . generally include 'a release of the plaintiff's cause of action in return for a settlement payment, along with a provision providing that the settling defendant would be reimbursed to some specified degree from any recovery the plaintiff received in a suit against another non-settling defendant.'" (quoting *Wilkins v. P.M.B. Sys. Eng'g, Inc.*, 741 F.2d 795, 798 n.2 (5th Cir. 1984)). Ultimately, this is a distinction without a difference because the Fifth Circuit has expressed approval of both, and the Agreement would be valid either way. *See id.* at 1158 n.7 ("Despite the potential for abuse, we think that properly disclosed Mary Carter agreements serve a legitimate function of providing litigants with capital with which to continue prosecution of their claims.").

6

the Fifth Circuit. *Bass*, 749 F.2d at 1165. Rather, what disturbs the Fifth Circuit is "the assignment of an entire claim" that "requires a second lawsuit" in which the settling defendant "must act as a surrogate plaintiff." *Lexington*, 567 F.3d at 186 (prohibiting a settling tortfeasor from seeking recovery from a non-settling tortfeasor based on the assignment of plaintiff's property damage claim); *see also Ondimar Transportes Maritimos v. Beatty St. Props., Inc.*, 555 F.3d 184, 189 (5th Cir. 2009) ("We adopt the rule for the general maritime law that the assignment of tort claims from the injured party to one tortfeasor permitting the settling defendant to proceed against a co-tortfeasor is invalid."). Here, the Agreement is not a wholesale assignment of claims. Rather, it is "best characterized as a reimbursement, requiring [Stolt] to pay [PI Claimants] a certain sum (often to help finance the suit) . . . and if [PI Claimants are] successful, [Stolt] is entitled to a portion of any recovery (or any over a stated amount) that [PI Claimants] receive[] from [Hammonia]." *Lexington*, 567 F.3d at 186. In other words, Hammonia will never pay anything to Stolt. Hammonia's liability will be "calculated based on [its] proportionate responsibility for [PI Claimants'] injuries *without regard to the amount of the settlement.*" *Combo*, 615 F.3d at 603. Because the Agreement will neither increase nor reduce Hammonia's proportionate share of liability, it does not function as a contribution claim by Stolt against Hammonia.

  I am confident this is the right answer because the Fifth Circuit decided *Lexington* against the backdrop of *AmClyde* and the proportionate liability framework for maritime cases. *See Lexington*, 567 F.3d at 185–87. Yet, in *Lexington*, the Fifth Circuit *favorably* contrasted Mary Carter Agreements from the wholesale assignment that it ultimately declared void. *See id.* at 186–87. Accordingly, I have no trouble deciding that the Fifth Circuit would find that the Agreement does not offend the proportionate liability framework for maritime cases. Hammonia makes too much of *Combo*. To start, the Fifth Circuit addressed the settlement agreement at issue in *Combo* only as it pertained to mootness. *See Combo*, 615 F.3d at 602–03. Moreover, *Combo*'s holding was simply to "make explicit what we have previously implied and hold that *AmClyde* does not prevent an action for contribution for a settling tortfeasor who obtains, as part of its settlement agreement with the plaintiff, a full release for all

7

parties." *Id.* at 603. This holding does not transform an entirely separate contract between Stolt and PI Claimants into a contribution claim by Stolt against Hammonia. I appreciate the creativity of this argument, but it simply has no basis in controlling federal maritime law.

## CONCLUSION

For all these reasons, Hammonia's Rule 60 Motion (*see* Dkt. 58) should be **DENIED**. I want to be clear that I make this recommendation based on the law. Hammonia is entirely correct that Stolt's continuing financial interest in this litigation undermines the credibility of any Stolt witness while creating a financial headwind that discourages settlement between Hammonia and PI Claimants, thus increasing the likelihood of litigation. But the Texas Supreme Court and the Fifth Circuit have decided time and again that these consequences do not outweigh plaintiffs' freedom of choice. Until they decide otherwise, my hands are tied.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 13th day of February 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE